# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

ROGER L. EIB,            )
                                  )
       Plaintiff,          )
                                  )
v.                               )     Case No. 1:17-CV-277
                                  )
MARION GENERAL HOSPITAL, INC.,  )
                                  )
       Defendant.       )

## OPINION AND ORDER

This matter is before the Court on the motion for summary judgment filed by Defendant Marion General Hospital (ECF 31). Plaintiff Roger Eib filed a response in opposition (ECF 35) and Marion Hospital filed a reply (ECF 37). For the reasons explained below, the motion is GRANTED in part and DENIED in part.

## BACKGROUND

Roger Eib filed this lawsuit against Marion General Hospital, his former employer, alleging age discrimination. Amended Complaint (ECF 11). Eib alleges that "Defendant Marion General Hospital . . . discriminated against and created a hostile work environment with respect to its former employee, Plaintiff Roger L. Eib . . . on the basis of his age and retaliated against Mr. Eib for opposing said discrimination, all in violation of the Age Discrimination in Employment Act[.]" Plaintiff's Response in Opposition, p. 1. Eib explains that he was hired by Marion General in 1977 "full-time . . . in the position of Emergency Medical Technician." Amended Complaint, p. 2. He was 22 years old at the time. *Id*. Three years later, Eib "became certified as a paramedic . . . [and] began working for MGH in the position of Paramedic. Within approximately five years . . . Mr. Eib was promoted to the position of Supervisor within the

Ambulance Department of MGH." *Id*. Many years later, "[a]fter Mr. Eib came to be forty years of age, MGH began a pattern of discriminatory actions directed at Mr. Eib because of his age including, but not limited to, pretextual disciplinary action. The pattern of discriminatory actions directed at Mr. Eib by MGH created an on-going hostile work environment." *Id*. Eib further alleges that his "job title was changed several times between his promotion to the position of Supervisor and September of 2013 at which time his job title was Unit Shift Manager, though his job duties and responsibilities were substantially unchanged." *Id*. Eib claims that on September 26, 2013, he "was demoted from his position as Unit Shift Manager to Paramedic . . . [and] [t]he position of Unit Manager was filled by an employee substantially younger than Mr. Eib." *Id*., p. 3. Jumping ahead several months, Eib contends that after he was demoted "he began to be mandated to work overtime immediately after the end of his regularly scheduled shift at a significantly increased rate and significantly more often than similarly situated employees. Between December of 2014 and March of 2016 Mr. Eib was mandated to work past the end of his regular shift more than three (3) times as often as the average for employees of the Ambulance Department and nearly twice as often as the next most frequently mandated employee." Plaintiff's Response in Opposition, p. 10.[1] Eib alleges that "[o]n or about April 26, 2016, Mr. Eib was the subject of a three day unpaid disciplinary suspension due to his age . . . [and] [o]n or about August 17, 2016, Mr. Eib was the subject of an indefinite paid suspension due to his age." Amended Complaint, p. 3. Eib filed a charge of discrimination against MGH

---

[1] In his Charge of Discrimination filed with the EEOC Eib asserted that this allegedly discriminatory assignment of overtime began "on February 1, 2011" and "continued through at least January 2016." First Charge of Discrimination (ECF 37-1, p. 26). This discrepancy about the time period is addressed below.

with the Equal Employment Opportunity Commission on September 26, 2016. *Id*. Eib alleges

that he was fired the very next day when he "attended a meeting with representatives of MGH

during which Mr. Eib stated that he had filed the above-referenced charge[.]" *Id*., p. 4. Eib then

filed a second charge of discrimination on September 27, 2016, alleging that his termination was

in retaliation for having filed his first charge. *Id*. Eib states that "[o]n or about June 14, 2017, the

EEOC issued a Notice of Right to Sue in each of the two claims of discrimination filed by Mr.

Eib against MGH[.]" *Id*. Eib attached copies of these Right to Sue letters to his Complaint.

*See* ECF 11-1 and 11-2. Eib seeks "compensatory damages–to include back pay, [front] pay, and

the value of lost benefits . . . liquidated damages in an amount equal to the determined

compensatory damages . . . punitive damages in an amount of $33,390,000.00 . . . [and] all

reasonable litigation costs and attorney fees[.]" *Id*., p. 5.

## STANDARD OF REVIEW

### I. Summary judgment standard.

Summary judgment is appropriate when the record shows that there is "no genuine issue

as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning

material facts are genuine where the evidence is such that a reasonable jury could return a verdict

for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding

whether genuine issues of material fact exist, the court construes all facts in a light most

favorable to the non-moving party and draws all reasonable inferences in favor of the non-

moving party. *See id.* at 255. However, neither the "mere existence of some alleged factual

dispute between the parties," *id.* at 247, nor the existence of "some metaphysical doubt as to the

material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

Summary judgment is not a substitute for a trial on the merits nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enterprises, Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989). However, if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003). "[Speculation and conjecture" also cannot defeat a motion for summary judgment. *Cooney v. Casady*, 735 F.3d 514, 519 (7th Cir. 2013). In addition, not all factual disputes will preclude the entry of summary judgment, only those that "could affect the outcome of the suit under governing law." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (citation omitted).

As the Seventh Circuit has explained many times and reiterated recently, a district court's task on summary judgment is as follows:

> On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder. Rather, the court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. We must look therefore at the evidence as a jury might, construing the record in the light most

favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true. As we have said many times, summary judgment cannot be used to resolve swearing contests between litigants.

*Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)).

## II. Age Discrimination in Employment Act.

The ADEA provides, in pertinent part, as follows:

It shall be unlawful for an employer–

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

. . .

It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment . . . because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

29 U.S.C. § 623(a)(1) and (d). And as this Court recently explained:

[T]he ADEA makes it unlawful for an employer to take adverse action against an employee who is forty years or older "because of such individual's age." 29 U.S.C. §§ 623(a)(1), 631(a). Age must be "the 'reason' that the employer decided to act." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009). Therefore, "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Id.* at 180. In this sense, the ADEA is somewhat narrower than Title VII. *Carson v. Lake Cty. Ind.*, 865 F.3d 526, 532 (7th Cir. 2017).

*Hope v. ArcelorMittal Burns Harbor, LLC*, 2019 WL 450700, at *11 (N.D. Ind. Feb. 4, 2019).

When called upon to assess the merits of a claim, this Court is charged with examining the

evidence "as a whole" to determine if a reasonable jury could conclude that a plaintiff's age was the reason he suffered an adverse employment action. The Seventh Circuit, in the case of *Ortiz v. Werner Enters., Inc.*, clarified the standard of review applicable to employment discrimination cases. Another district court summarized the Seventh Circuit's holding in *Ortiz* as follows:

> Courts previously spoke of proceeding under an indirect or direct method to establish discrimination, but the Seventh Circuit has instructed that instead of using such tests, the Court should consider the evidence "as a whole" to determine whether it "would permit a reasonable factfinder to conclude that the plaintiff's [race, religion, or national origin] caused the [adverse employment action]." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). The Court must determine "whether a reasonable factfinder could 'conclude that [Mahran's] proscribed factor caused the [adverse employment action].'" *Brown v. DS Servs. of Am., Inc.*, 246 F.Supp.3d 1206, 1216 (N.D. Ill. 2017) (quoting *Ortiz*, 834 F.3d at 765). This does not mean, however, that the Court cannot consider the traditional burden-shifting test laid out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), under which Mahran attempts to demonstrate that he has the evidence needed to survive summary judgment. *Ortiz*, 834 F.3d at 766 (noting that its decision does not overrule *McDonnell Douglas*). The Court considers the evidence through the *McDonnell Douglas* framework and then turns to a cumulative review of the evidence to determine whether a reasonable factfinder could determine that Mahran's religion or national origin caused the complained-of adverse actions. *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017).

*Mahran v. Advocate Health & Hosps. Corp.*, 2019 WL 952131, at *9 (N.D. Ill. Feb. 26, 2019).

The *McDonnell Douglas* burden-shifting method "allows a plaintiff to establish a *prima facie* case of discrimination and then rebut a defendant's stated non-discriminatory reason for the termination." *Rivera v. WestRock Servs. Inc.*, 2018 WL 6528017, at *3 (N.D. Ill. Dec. 12, 2018) (citing *David*, 846 F.3d at 224). A plaintiff may establish a *prima facie* case by presenting facts that 1) he belongs to a protected class, 2) he was meeting his employer's legitimate expectations, 3) he suffered an adverse employment action, and 4) his employer treated similarly situated, younger employees more favorably. *Id*. If a plaintiff does this, then the defendant employer "must

articulate a legitimate, nondiscriminatory reason" for an adverse employment action, "at which

point the burden shifts back" to the plaintiff to submit evidence showing that the employer's

reason is pretextual. *Id*. (quoting *Brown v. DS Services of America, Inc.*, 246 F.Supp.3d 1206,

1217 (N.D. Ill. 2017)).

## DISCUSSION

As stated above, Eib contends that MGH discriminated against him on the basis of his age

on several occasions over the span of several years, and that those incidents were part of a

continuing pattern of discriminatory conduct. MGH insists that Eib's attempts to characterize

discrete acts of alleged discrimination as a continuing violation is really an attempt to evade the

fact that most of his claims are time-barred. MGH argues that those claims that are not time-

barred, including Eib's hostile environment claim and retaliation claim, fail to survive summary

judgment because Eib cannot establish a *prima facie* case under *McDonnell Douglas*.

MGH correctly notes that "a charge of discrimination under the ADEA must be filed

within 180 days of the alleged adverse employment action." Defendant's Brief in Support (ECF

32), p. 4 (citations omitted). MGH contends Eib failed to do that, arguing as follows:

> Eib's initial EEOC charge was filed on September 26, 2016. . . . In that charge,
> Eib claimed that the Hospital's alleged unlawful employment practices included:
> 1) harassment and discrimination through January of 2016 based on the
> assignment of overtime; 2) discriminatorily [sic] "demoting" Eib from his charge
> paramedic position in September of 2013; and 3) harassment and discrimination
> in the form of a disciplinary suspension on April 26, 2016 and an investigatory
> suspension on August 17, 2016. . . . All of Eib's claims, other than item 3 above,
> were untimely filed and therefore subject to dismissal.

*Id*. MGH notes that "[f]or any alleged harassing or discriminatory overtime assignments that took

place through January 31, 2016[,] to be properly brought before this Court, the EEOC charge

would had to have been filed on or before July 29, 2016–180 days after the last day of January, 2016. . . . The charge was actually filed on September 26, 2016, which is nearly two months too late to include such claims." *Id*., p. 5. MGH also insists that "[s]ignificantly more untimely is Eib's claim that he was discriminatorily [sic] demoted in September of 2013. . . . Eib was more than two years too late for the filing of that claim. Accordingly, Eib's claims that he was demoted from his charge paramedic position based on his age in September of 2013 and his claim that his overtime assignments through January of 2016 were harassing and discriminatory are untimely and subject to dismissal." *Id*.

In his response, Eib does not dispute that an ADEA claim must be filed with the EEOC within 180 days of the alleged discriminatory act, but insists that the continuing violation doctrine applies and breathes life into claims that would otherwise be time-barred. Plaintiff's Response in Opposition (ECF 35), p. 5. Eib's argument is as follows:

> The Supreme Court . . . has recognized the continuing violation theory under which a continuing pattern of discrimination is actionable so long as a present violation is demonstrated. *United Air Lines, Inc. v. Evans*, 431 U.S. 553 (1977). Since this recognition by the Supreme Court, the Seventh Circuit Court of Appeals has discussed three theories under which a plaintiff may establish a continuing violation: 1) when an employer makes employment decisions over time that make it difficult for the employee to determine the actual date of discrimination, 2) an employer's express, openly espoused policy that is alleged to be discriminatory, and 3) where discrete acts of discrimination are part of an ongoing pattern and at least one of the discrete acts occurred within the relevant limitations period.

*Id*. (citing *Stewart v. CPC International, Inc.*, 679 F.2d 117, 120-21 (7th Cir. 1982)). Eib states that "[i]t is the third enumerated theory upon which Mr. Eib relies in bringing forth allegations relating to discrete acts occurring more than 180 day[s] prior to his filing of charges with the EEOC." *Id*., pp. 5-6.

8

MGH argues that "[t]he continuing violation exception does not apply to Eib's claims."

Defendant's Reply in Support (ECF 37), p. 3. MGH elaborates as follows:

> Eib's claim that he was demoted in September of 2013 is untimely because it was a "discrete act" and therefore not subject to the application of the continu[ing] violation doctrine. . . . With respect to Eib's hostile work environment claim, his reliance on the continuing violation doctrine is also misplaced. Eib argues that as long as any alleged adverse action occurs within the filing period, then every action, regardless of when it occurred, may be considered. . . . Eib asserts that his suspensions and termination in 2016 are acts that occurred within the filing period, thus serving as an anchor for all earlier complaints. Eib's interpretation of the continuing violation doctrine is incorrect.

*Id*., pp. 3-4 (underlining in original).

MGH also argues that Eib's claims, even if timely, fail to survive summary judgment under a *McDonnell Douglas* analysis. MGH claims Eib fails to establish a *prima facie* case for his claim of a hostile work environment. Defendant's Brief in Support, p. 7. Eib bases his hostile work environment claim on his allegations that he was forced to work overtime (as discussed above), and that he was suspended on April 26, 2016, and again on August 17, 2016, for alleged performance issues. MGH contends that "the allegations regarding Eib's overtime assignments are clearly untimely, but even if they were timely, this is not the stuff of which a hostile work environment claim is made." *Id*., p. 8.

MGH also argues that Eib also fails to establish a *prima facie* case for age discrimination because he "cannot show that he was meeting the Hospital's legitimate expectations or that he was treated less favorably than substantially younger employees. Eib also lacks any evidence of pretext." *Id*., p. 19. Finally, MGH argues that it is entitled to summary judgment on Eib's retaliation claim because "the Hospital was [not] even aware that he had filed an EEOC charge (his protected activity) at the time it made the decision to terminate his employment." *Id*., p. 23.

Citing affidavits of Hospital employees involved in the decision to fire Eib, MGH states as follows:

> Eib filed his first charge of discrimination on September 26, 2016, but the Hospital did not receive it until October 17, 2016. . . . The Hospital had already made the decision to terminate Eib's employment on September 7, 2016, long before receiving notice of the charge. . . . When Marion General's President and CEO, Stephanie Hilton-Seibert, approved the recommendation to terminate Eib's employment on September 7, 2016, she was also unaware of any EEOC charge having been filed, because it had still not been filed. . . . In short, the Hospital could not have been motivated to terminate Eib's employment based on protected activity about which it knew nothing at the time it made the adverse employment decision.

*Id*. MGH is adamant that "[t]he reasons offered by the Hospital for terminating Eib's employment are entirely legitimate and based on the Hospital's assessment that Eib was continuing, despite many warnings and a suspension, to provide poor patient care, along with other related performance problems." *Id*., p. 24.[2]

### 1. Timeliness of claims and continuing violation doctrine.

The parties do not dispute that the statute of limitations in Indiana for an ADEA charge is 180 days from the alleged discriminatory conduct. *Thomas v. City of Michigan City, Indiana*, 672 F.App'x 587, 589 (7th Cir. 2016); *McKee v. Eaglecare, LLC*, 2015 WL 4603206, at *1 (N.D. Ind. July 30, 2015) (Indiana plaintiffs suing for ADEA violations must file a charge of discrimination within 180 days of the unlawful employment practice.); *Purcell v. Indiana Univ.-S. Bend*, 2014 WL 4656565, at *3 (N.D. Ind. Sept. 17, 2014) (quoting *McCombs v. Federal Exp.*

---

[2] In support of its arguments and factual assertions MGH presents the affidavits of Eib's managers and supervisors, including those involved in the decision to terminate his employment. These include: Administrative Director of Emergency Services Tammy Cornelious (ECF 32-3, pp. 2-11); Ambulance Department Manager Derek Jackson (*id*., pp. 13-25); Employer Relations Manager Sheryl Hendrickson (*id*., pp. 33-43); Administrative Director of Human Resources Karen Jones (*id*., pp. 64-69); and President and CEO Stephanie Hilton-Seibert (*id*., pp. 70-73).

*Corp.*,965 F.Supp.2d 1018, 1022 (N.D. Ind. 2013)) ("'In Indiana, plaintiffs pursuing a cause of action under the ADEA must file a charge with the EEOC within 180 days after the alleged unlawful practice occurred.'"). If a charge is not timely filed, "'the employee may not challenge the [alleged unlawful employment] practice in court.'" *Id.* (quoting *Chaudhry v. Nucor Steel-Indiana*, 546 F.3d 832, 836 (7th Cir. 2008)).

Once the EEOC completes its investigation (or if it is unable to do so within 180 days from the date of the charge), the agency issues a Notice of Right to Sue letter enabling the complainant to bring a lawsuit alleging claims under the ADEA (which in turn must be filed within 90 days of receipt of the notice). *See Davis v. Palos Health*, 2019 WL 214916, at *2 (N.D. Ill. Jan. 16, 2019) ("For ADEA and Title VII claims, 'a plaintiff must file her suit within 90 days from the date the EEOC gives notice of the right to sue.'") (citations omitted).

Many of the alleged acts of discrimination about which Eib complains, such as his 2013 demotion and the unfair overtime work beginning in 2011, would not be actionable in a lawsuit filed years later *unless* he can establish that those acts were sufficiently linked to recent acts of discrimination so as to constitute a continuing violation. Eib insists they were and makes a gallant effort to weave those discrete acts into a whole cloth and call it a continuing violation, but his argument does not hold up under scrutiny. In the end, the only thing linking the alleged discriminatory acts is Eib's *conclusion* that they are linked.

Eib's recitation of the facts regarding his 2013 demotion, as stated in his Charge of Discrimination, reads in its entirety as follows:

> In or about September 2013, Tammy Cornelious, Administrative Director over the Ambulance Department, and Bernadine Wallace, Chief Nursing Officer over MGH, met with Mr. Eib. At that meeting Ms. Cornelious and Ms. Wallace stated

that Mr. Eib would be demoted from his previous position as Unit Shift Manager over the Ambulance Department to staff paramedic and requested that Mr. Eib agree to early retirement from MGH. Mr. Eib declined to retire[] early from MGH.

Charge of Discrimination (ECF 37-1, p. 27). The next line in Eib's Charge states: "Since that time, and as a result of Mr. Eib's refusal to accept early retirement, Mr. Eib has been the subject of a hostile work environment and harassment from . . . MGH[.]" *Id*. So Eib believes his refusal to retire was the trigger that led to subsequent harassment and a hostile work environment. Eib's attempt to link his demotion in 2013 to a continuing pattern of age-based harassment by MGH is too tenuous and not supported by the law.

MGH contends that what Eib calls a demotion was actually the result of a restructuring or reduction in force that affected all employees of the Ambulance Department regardless of age. Defendant's Brief in Support, pp. 6-7 (citing affidavit of Tammy Cornelious). MGH explains that it "eliminated all shift-level supervision within the Ambulance Department. . . . [A] small group of positions . . . were eliminated, but no one retained a shift-level leadership role or was replaced in the reduction in force. . . . Eib's position was eliminated, along with the only other charge paramedic position, which had been held by . . . [an employee who] was not yet 40 years of age at the time of the job eliminations in the fall of 2013. . . . Thus, there is no comparator that allows Eib to establish that he was replaced by someone substantially younger than he was or that he was treated less favorably than any similarly situated employees who were substantially younger." *Id*. But it doesn't matter what the reason was, because the adverse employment action–whether a reduction in force or a demotion–was a discrete event that became actionable, if at all, when it happened, which was in September of 2013. As MGH correctly argues, "[f]or any

claim related to the elimination of Eib's charge paramedic position to be timely, he needed to file

an EEOC charge on or before March 22, 2014–180 days afer Eib was notified that his position

had been eliminated. . . . Eib was more than two years too late for the filing of that claim."

Defendant's Brief in Support, p. 5.

As to Eib's contention that he was forced to work overtime, he makes no mention of this

in his Amended Complaint (nor was it mentioned in his original complaint). He did, however,

allege as follows in his first Charge of Discrimination:

> Beginning on February 1, 2011, MGH instituted a policy under which the staff of
> the Ambulance Department were able to be mandated to work past the end of their
> regularly scheduled shift in order to meet staffing needs. The policy set forth a
> procedure by which staff would be mandated to work beyond their regularly
> scheduled shift on a rotational basis. However, Mr. Eib was consistently mandated
> to work beyond his regularly scheduled shift at a significantly greater frequency
> than younger, similarly situated employees. This practice has continued through at
> least January 2016.

Charge of Discrimination (ECF 37-1, p. 26). Eib insists that this mandatory overtime is an

example of MGH's age bias, since it began "[a]fter Mr. Eib declined to resign" and instead was

demoted in September of 2013. Plaintiff's Response in Opposition, p. 10. Eib claims in his brief

that "[b]etween December of 2014 and March of 2016 Mr. Eib was mandated to work

[overtime]." *Id*. This statement seems to conflict with the allegations in Eib's Charge of

Discrimination, which allege that the overtime issue began "on February 1, 2011[.]" But while

the time period is unclear, what is clear is that Eib alleged in his Charge that he was subjected to

an adverse employment action when he was forced to work overtime on several occasions

between February 1, 2011, and January 2016. But as MGH points out, that Charge was not filed

within 180 days of the end of January 2016 and so Eib's claim that he was discriminated against

when he was forced to work overtime shifts is time-barred. (And Eib cannot amend his claim in his summary judgment brief. CITE.)

In addition to arguing that Eib's claims of forced overtime are time-barred, MGH also argues that its overtime policy did not constitute an actionable adverse employment action in the first place. MGH insists that "[t]he assignment of overtime was consistent with Eib's job duties and with the Hospital's overtime policy . . . and, as such, does not rise to the level of an adverse employment action. . . . This conclusion is buttressed by the fact that Eib's required overtime assignments were so infrequent (only 26 assignments over 876 work days, or an average of 6.5 such assignments per year) that they could not reasonably be considered materially adverse." Defendant's Brief in Support, p. 14 (citing affidavit of D. Jackson). MGH also insists that "[o]ver the period of four years about which Eib complains, 40 different employees were assigned to work overtime, ranging in age from 20 to 61. . . . The person who worked the most overtime during that period . . . was 10 years younger than Eib." *Id*. Therefore, argues MGH, Eib cannot establish a *prima facie* case of age discrimination based on the overtime issue since he has "no evidence that substantially younger employees were treated more favorably than Eib with regard to overtime assignments." *Id*., pp. 15.

The Court need not engage in a *McDonnell Douglas* analysis of this issue, however, since it is clear that Eib's allegations regarding the assignment of overtime, like his claim that he was demoted, are time-barred and are not saved or revived merely because he invokes the continuing violation doctrine. As this Court has explained:

> Under the continuing violation doctrine, a plaintiff may obtain relief for a time-barred act of discrimination if he can link it with acts that fall within the statutory limitations period. *See Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997,

14

> 1003 (7th Cir. 2000); *Filipovic v. K & R Exp. Sys., Inc.*, 176 F.3d 390, 396-397
> (7th Cir. 1999) (explaining that the court will treat the series of continuing
> violations as one continuous act ending within the limitations period). The
> continuing violation doctrine doesn't apply when the time-barred incident alone
> should have triggered the plaintiff's awareness that his rights had been violated.
> *See Simpson v. Borg-Warner Auto, Inc.*, 196 F.3d 873, 875-876 n. 1 (7th Cir.
> 1999).

*Sikora v. Honeywell Int'l, Inc.*, 2008 WL 2756258, at *5 (N.D. Ind. July 11, 2008). "The

continuing violation doctrine is not available for discrete discriminatory acts such as a failure to

hire or promote." *King v. Elementary Sch. Dist. #159*, 2018 WL 1734645, at *3 (N.D. Ill. Apr.

10, 2018) (citing *Nat'l. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). "Rather,

'[e]ach discriminatory act starts a new clock for filing charges alleging that act.'" *Id*. As this

Court has also explained, "[i]n order to determine the timeliness of an EEOC complaint, it is

important to 'identify precisely the 'unlawful employment practice' of which [the plaintiff]

complains.'" *McCombs v. Fed. Exp. Corp.*, 965 F.Supp.2d 1018, 1022 (N.D. Ind. 2013) (quoting

*Del. State College v. Ricks*, 449 U.S. 250, 257 (1980)). "The 'proper focus is upon the time of the

*discriminatory acts*, not upon the time at which the *consequences* of the acts became most

painful.' . . . The 'mere continuity of employment, without more, is insufficient to prolong the

life of a cause of action for employment discrimination.'" *Id*. (quoting *Ricks*, 449 U.S. at 257).

And the Seventh Circuit also has explained that "[t]he continuing violation doctrine does not

apply where a plaintiff's allegations describe a series of discrete acts of discrimination." *Kuhn v.*

*United Airlines, Inc.*, 640 F.App'x 534, 537 (7th Cir. 2016) (citing *Garrison v. Burke*, 165 F.3d

565, 570 (7th Cir. 1999)) (noting that the continuing-violation doctrine does not apply to

discrete, isolated, and completed acts of discrimination). Furthermore, a "district court [is] not

required to accept [a plaintiff's] bare allegation of an ongoing hostile work environment in order

to find a continuing violation." *Id.* (citing *Koelsch v. Beltone Elecs. Corp.*, 46 F.3d 705, 707 (7th Cir. 1995)) ("mere assertion of a hostile work environment did not establish a continuing violation where the alleged incidents of discriminatory harassment were not sufficiently related."). This is especially true where a plaintiff "previously had the opportunity to sue for discrimination or hostile work environment based on the events preceding [the filing of a Charge of Discrimination but] chose not to do so within the time allowed." *Id.*

Another district court addressing this same issue explained as follows:

[U]nder federal employment discrimination statutes, a discrete discriminatory act occurs on the day that it happens and a plaintiff must file his or her charge within 300 days of that date. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002) (addressing claims brought under Title VII). A layoff is an easily identifiable discrete act. *See id.* at 114 ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination . . . constitutes a separate actionable unlawful employment practice.") (internal quotation marks omitted). Because Novotny did not file his EEOC charge within 300 days of the July 18, 2011 layoff, his claim based on that allegedly discriminatory act is time-barred.[3]

*Novotny v. Plexus Corp.*, 2017 WL 1093161, at *5-6 (N.D. Ill. Mar. 23, 2017).

Eib argues that the otherwise time-barred adverse actions (his demotion and the unfair overtime) are sufficiently related to later acts that are not time-barred (his disciplinary suspensions in April and August of 2016) so as to constitute a continuing violation. The problem with his argument is that Eib is trying to fit square pegs into round holes. As the court in *Novotny* explained:

[D]iscrete discriminatory acts are not actionable if time-barred, even if they are related to acts that fall within the statutory period. [*Nat'l R.R. Passenger Corp. v.*

---

[3] Illinois law requires that an ADEA claimant file a Charge of Discrimination within 300 days of the alleged discriminatory event or conduct, as opposed to Indiana's 180-day limitation period.

> *Morgan*, 536 U.S. 101, 113 (2002)]. *See also Washington v. Am. Drug Stores, Inc.*, 119 Fed.Appx. 3, 5 (7th Cir. 2004) (the continuing violation doctrine does not allow deferred suit on discrete discriminatory acts); *Anbudaiyan v. Ill. Dep't of Fin. & Prof'l Regulation*, 2012 WL 2525696, at *4 (N.D. Ill. June 29, 2012) (finding no appropriate basis to consider separate promotion denials as part of a single continuing violation of Title VII or the ADEA because a failure to promote–a discrete act that is easy to identify–constitutes a separate actionable unlawful employment practice).
>
> Therefore, to the extent Novotny seeks to utilize the continuing-violation doctrine to save his untimely layoff claim by connecting the layoff to his later termination, that attempt fails.

*Novotny*, 2017 WL 1093161, at *5-6.

Eib, like many employment discrimination plaintiffs in similar circumstances, attempts to link discrete acts of alleged discrimination that occurred over time and characterize them as a continuing violation. Eib knew in 2011, or at least sometime between 2011 and January 2016, that he was being subjected to what he believed to be the discriminatory assignment of overtime. He knew in September 2013 that he was subject to a restructuring or reduction in force, which he alleges was a discriminatory demotion. He did not file a Charge of Discrimination, however, until September 26, 2016, long after the 180-day filing period expired on those potential claims. His attempt to resurrect those untimely claims by tossing allegations of discriminatory acts spanning many years into the same pot and calling it a continuing violation is unavailing. Nothing prevented Eib from filing a Charge of Discrimination to seek redress when he was "demoted" in 2013 or burdened with unfair overtime assignments from 2011 until January 2016.

Eib's argument that the adverse employment actions to which he was subjected, including demotion, unfair overtime assignments and suspensions, are sufficient to constitute a continuing violation is unsupported by the facts and the law. Accordingly, Eib cannot invoke the continuing

violation doctrine to make timely his untimely claims based on his September 26, 2013, demotion or the alleged discriminatory imposition of overtime from February 2011 through January 2016 and MGH is entitled to judgment in its favor on those claims.

**2. Hostile work environment claim.**

Eib alleged in his Amended Complaint that "[o]n or about April 26, 2016, Mr. Eib was the subject of a three (3) day unpaid disciplinary suspension due to his age[]" and that "[o]n or about August 17, 2016, Mr. Eib was the subject of an indefinite paid suspension due to his age." Amended Complaint, p. 3. Both of those statements, of course, include a legal conclusion and so are not very helpful. *See Richter v. Evans*, 2014 WL 4700852, at *3 (N.D. Ind. Sept. 22, 2014) (citing *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) ("legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth[.]")). Eib's Charge of Discrimination, once again, contains more detail than his Complaint. In his Charge, Eib alleged that "since [his demotion], and as a result of Mr. Eib's refusal to accept early retirement, Mr. Eib has been the subject of a hostile work environment and harassment[.]" First Charge of Discrimination (ECF 37-1, p. 27). Eib alleged that "[t]his harassment began as a nebulous hostility toward Mr. Eib[]" then "escalated to include overt harassment and unjustified disciplinary action." *Id*. Eib then discusses his suspensions on April 26, 2016, and August 17, 2016, claiming they, coupled with the earlier "nebulous hostility," constituted actionable "harassment" and a hostile work environment. *Id*.

Eib contends that MGH's proffered reasons for his suspensions–that he failed to provide proper patient care on two occasions while on emergency calls–were pretextual and that the suspensions were actually imposed because of his age, which in turn, together with forced

overtime and "nebulous hostility" from supervisors, created a hostile work environment.

Plaintiff's Response, p. 12. Based on these allegations, Eib insists that "a reasonable factfinder

could conclude that the work environment was both subjectively and objectively offensive." *Id*.

Eib also argues–or rather concludes–that "it is clear that the discriminatory conduct was frequent

and often severe. Furthermore, the constant threat of pretextual discipline . . . while not

physically threatening is certainly sufficient to humiliate an employee." *Id*. That's all the

evidence Eib can muster to support his hostile work environment claim. He even concedes that

"[i]n the instant case, it is undisputed that so single event or occurrence is alone sufficient to rise

to an actionable level. . . . However, '[c]ourts should not carve up the incidents of harassment

and then separately analyze each incident, by itself, to see if each rises to the level of being

severe or pervasive.'" *Id*. (quoting *Hall v. City of Chicago*, 713 F.3d 325, 331 (7th Cir. 2013)).

Eib insists that "[w]hen considering the breadth of the evidence, it is certainly sufficient to rise to

the level of pervasive." *Id*., p. 14. Once again though, that is a conclusion–and a wrong one. The

Court agrees with MGH that Eib's allegations do not come close to establishing that he was

subjected to actionable harassment or a hostile work environment based on his age. As MGH

puts it, "Eib's conclusions connecting his own perceived poor treatment to his perceptions about

how others were treated are pure speculation, which is insufficient to withstand summary

judgment." Defendant's Brief in Support, p. 21.

     The Seventh Circuit "has assumed, but never decided, that plaintiffs may bring hostile

environment claims under the ADEA[.]" *Kawczynski v. F.E. Moran, Inc*., 238 F.Supp.3d 1076,

1085-86 (N.D. Ill. 2017) (citing *Racicot v. Wal-Mart Stores, Inc*., 414 F.3d 675, 678 (7th Cir.

2005)); *see also Fugate v. Dolgencorp, LLC*, 555 Fed.Appx. 600, n.1 (7th Cir. 2014) (assuming

without deciding that plaintiffs may bring a claim of a hostile work environment under the ADEA). "Workplace harassment that is sufficiently severe or pervasive to alter the terms of employment is actionable as a hostile work environment claim. *See Cole v. Bd. of Trustees of N. Illinois Univ.*, 838 F.3d 888, 895 (7th Cir. 2016). More specifically, the ADEA is violated when 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or persuasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Kawczynski v. F.E. Moran, Inc.*, 238 F.Supp.3d at 1086 (quoting *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016)). The court in *Kawczynski* further explained as follows:

> "Surviving summary judgment on a hostile work environment claim requires sufficient evidence demonstrating (1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Boss*, 816 F.3d at 920; *see also Poullard* [*v. McDonald*], 829 F.3d [844] at 859 [(7th Cir. 2013)]. In determining whether a conduct is severe or pervasive under this standard, courts look to "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Courts consider hostile work environment claims under a "totality of the circumstances" approach. *See id.*; *Boss*, 816 F.3d at 920.

*Kawczynski*, 238 F.Supp.3d at 1085-86.

To reiterate, Eib bases his hostile work environment claim on (untimely) complaints of unfair overtime, "nebulous hostility" from a supervisor, and two incidents of what he claims were pretextual discipline. He urges the Court to consider those matters holistically and conclude that they rise to the level of a hostile work environment. Eib's hostile work environment argument, and the scant evidence he presents to support it, is unavailing. It is not surprising that

Eib cites and discusses very little case law on the issue of hostile work environment, because an examination of the law reveals just how insufficient his "evidence" is.

"It is important to remember that 'discrimination laws do not mandate admirable behavior from employers, through their supervisors or other employees. Instead, the law forbids an employer from creating an actionably hostile work environment for members of protected classes.'" *Redus v. Illinois Bell Tel. Co.*, 2018 WL 4404668, at *6 (N.D. Ill. Sept. 17, 2018) (citing *Russell v. Bd. of Trustees of Univ. of Ill. at Chicago*, 243 F.3d 336, 343 (7th Cir. 2001)). A hostile work environment qualifies as an adverse employment action under the ADEA where "'harassment-mistreatment of an employee by his or her coworkers or supervisors is severe enough that it substantially worsens the employee's conditions of employment as . . . would be perceived by a reasonable person in the position of the employee.'" *Galvan v. Cmty. Unit Sch. Dist. No. #300*, 46 F.Supp.3d 836, 842 (N.D. Ill. 2014) (quoting *Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 745 (7th Cir. 2002)).

The *Novotny* case is instructive on this issue, also. The district court rejected Novotny's attempt to invoke the continuing violation doctrine to establish his hostile work environment claim, just as Eib is doing here. The district court explained as follows:

> With respect to his hostile work environment claim, Novotny, again relying on the continuing-violation doctrine, points to case law holding that as long as an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered for purposes of determining liability. Novotny argues that the other ADEA violations alleged in his complaint, including his termination, are acts contributing to his hostile work environment claim that occurred within the filing period. But those discrete acts–only one of which is timely–at most support his other ADEA claims; they do not do not contribute to his hostile work environment claim. *See Wallin v. THCChicago, Inc*., No. 99-3173, 2004 WL 2535283, at *7 (N.D. Ill. Sept. 23, 2004) (plaintiff's firing was not an act creating a hostile environment but was an example of

allegedly disparate treatment and was therefore not part of the same hostile environment claim). Because Novotny cannot point to any harassment–as opposed to an adverse employment action–that took place within the 300-day period,[4] his hostile work environment claim fails. *See, e.g.*, *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256 (7th Cir. 2011) (affirming the district court's grant of summary judgment on plaintiff's Title VII hostile work environment claim because plaintiff attended only six days of work within the 300-day time period and did not identify any incident occurring on those six days that suggested the existence of a hostile work environment).

*Novotny v. Plexus Corp.*, 2017 WL 1093161, at *5-6.

Eib's evidence that he was subjected to harassment and a hostile work environment because he experienced "nebulous hostility" from a supervisor and was suspended on two occasions is insufficient to establish a material issue of fact precluding summary judgment and MGH is entitled to judgment as a matter of law on Eib's hostile work environment claim.[5]

**IV. Retaliation claim.**

"There are only three simple things a plaintiff needs to plead to make out a plausible retaliatory discharge claim. A plaintiff must show: 1) that he engaged in statutorily protected activity; 2) he suffered an adverse action; and 3) there is a causal link between the protected activity and the adverse action." *Seale v. Medsource, LLC*, 2017 WL 1591826, at *2 (C.D. Ill. Apr. 28, 2017) (citing *Essex v. United Parcel Serv., Inc.*, 111 F.3d 1304, 1309 (7th Cir. 1997)). To prevail on a retaliation claim requires "proof that the desire to retaliate was the but-for cause

---

[4] *See* footnote 3 above.

[5] Regarding Eib's August 2016 paid suspension, MGH also points out that "Courts have held that paid investigatory suspensions are insufficient to rise to the level of an adverse employment action." Defendant's Brief in Support, p. 17 (citing *Teklehaimanot v. Park Center, Inc.*, 804 F.Supp.2d 886 (N.D. Ind. 2011) (placing employee on paid investigatory suspension not an adverse employment action); *Nichols v. Southern Illinois University-Edwardsville*, 510 F.3d 772, 787 (7th Cir. 2007) (same)).

of the challenged employment action." *Ryan v. Town of Highland*, 2017 WL 2971960, at *7

(N.D. Ind. July 12, 2017) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352, 133

S. Ct. 2517, 2528 (2013)).

As discussed previously, Eib alleges that he was fired on September 27, 2013, one day

after he filed his first Charge of Discrimination. In his Amended Complaint, he simply states that

"[o]n or about September 27, 2016, Mr. Eib attended a meeting with representatives of MGH

during which Mr. Eib stated that he had filed the above-reference[d] charge, after which Mr. Eib

was immediately terminated." Amended Complaint, p. 4. As with his other claims in this suit,

Eib's Charge of Discrimination contains more detail than his Complaint. In his second Charge,

Eib alleged as follows:

> On September 26, 2016, Mr. Eib filed a charge of age discrimination with the
> EEOC. On that same date, he was contacted by Tammy Cornelious,
> Administrative Director over the Ambulance Department of MGH requesting he
> attend a meeting at 2:30 PM on September 27, 2016.
>
> During that meeting, Mr. Eib requested to have an attorney present and was
> denied. Mr. Eib informed Ms. Cornelius that he had filed a charge of
> discrimination with the EEOC. Immediately after so informing Ms. Cornelious,
> she terminated Mr. Eib's employment.

Second Charge of Discrimination (ECF 32-2, p. 4). Eib also claims that "[b]etween the

approximate dates of May 2, 2016 and May 6, 2016, Mr. Eib, via counsel, corresponded with

attorneys representing MGH at Ice Miller, LLP, raising the issue of discriminatory conduct

directed toward Mr. Eib in violation of the Age Discrimination in Employment Act[.]" Amended

Complaint, p. 3. Eib's position, then, is that MGH knew about his complaints and fired him one

day after he had filed his first Charge of Discrimination.

MGH claims that it made the decision to fire Eib on September 7, 2016, nearly three

weeks *before* Eib filed his first Charge, and so it could not have fired him in retaliation for that Charge. The Hospital argues that it "could not have been motivated to terminate Eib's employment based on protected activity about which it knew nothing at the time it made the adverse employment decision." Defendant's Brief in Support, p. 23 (citing *Shafer v. Kal Kan Foods, Inc.*, 417 F.3d 663, 664 (7th Cir. 2005) (proof of retaliation presupposes the decision-maker knew that the plaintiff engaged in statutorily protected activity); *Durkin v. City of Chicago*, 341 F.3d 606, 614 n. 4 (7th Cir. 2003) (employer's knowledge of protected activity is implicit in first element of *prima facie* case); *Flores v. City of East Chicago*, 2017 WL 25414 (N.D. Ind. Jan. 3, 2017) (it is "common sense" that protected activity cannot be shown to have motivated retaliation if there is no evidence that the employer knew about it)).

Eib counters by arguing that MGH is wrong to focus on the date his first Charge of Discrimination was filed since "[t]his date . . . is clearly later than the initial protected activity conducted by Mr. Eib." Plaintiff's Response in Opposition, p. 21. Eib then refers again to the fact that "[o]n or about May 2, 2016," his attorney communicated with counsel for MGH "opposing the discriminatory treatment he had been the subject of in violation of the ADEA." *Id*., p. 22 (citing ECF 35-2, p. 13, Eib Affidavit, Exh. 1). Eib argues that "[u]nder the ADEA, complaints to an employer constitute protected activity if they 'include an objection to discrimination on the basis of age.'" *Id*., (quoting *Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 658 (7th Cir. 2012)). In other words, according to Eib, he engaged in protected activity months before he was fired, when his attorney sent an email to MGH's counsel. Furthermore, Eib alleges that he expressly told Ms. Cornelious during their September 27 meeting that he had filed a Charge of Discrimination the day before. Therefore, argues Eib, MGH knew that he had lodged complaints

24

about age discrimination, even before he filed his first Charge, and fired him anyway.

Eib insists that his attorney's "email sent to MGH's counsel, by virtue of expressly complaining about age discrimination[,] constitutes a protected activity. It is undisputable that a retaliatory termination is a prohibited employer action and given the time frame between that activity and Mr. Eib's termination and the very quick escalation in discipline from perfect employee evaluations to termination it is reasonable to infer that the complaint was the but for cause of Mr. Eib's termination. Therefore, a reasonable factfinder could conclude that MGH retaliated against Mr. Eib's protected activity by terminating his employment." *Id.*

MGH, in its reply brief, argues that Eib's attorney's email sent in May of 2016 "to the Hospital's outside counsel raising the topic of discrimination and suggesting the parties attempt to resolve the matter[]" is immaterial since "Eib points to no evidence showing that those who were responsible for making the decision to recommend and approve Eib's termination were ever made aware of the email." Defendant's Reply in Support, p. 13 (citing *Shafer v. Kal Kan Foods, Inc.*, 417 F.3d 663, 664 (7th Cir. 2005) (to prove retaliation, decision-maker must know of plaintiff's protected activity)). MGH further contends that "[e]ven if the Hospital decision-makers were aware of the email, it is of no avail. The email was sent on May 2, 2016. The decision to terminate Eib was made and approved on September 7, 2016, four months later. The temporal sequence of alleged protected activity followed many months later by an adverse employment action is insufficient to establish causation." *Id.* MGH cites several cases in which courts have concluded that suspicious timing by itself is insufficient to establish a retaliation claim. *Id. See Stone v. City of Indianapolis Pub. Utilities Div.*, 281 F.3d 640, 644 (7th Cir. 2002) ("we remind that mere temporal proximity between the filing of the charge of discrimination and

the action alleged to have been taken in retaliation for that filing will rarely be sufficient in and of itself to create a triable issue."). Finally, MGH argues that "[t]emporal sequence of events is literally Eib's only argument" to support his retaliation claim and that "[i]t is insufficient." *Id*., p. 14.

However, the Seventh Circuit also noted in *Stone* that "[t]he question of how much evidence the plaintiff must present to establish a triable issue that the adverse employment action of which he complains was retaliatory is not susceptible of a general answer." *Stone*, 281 F.3d at 644. MGH correctly states the law regarding the suspicious timing of an adverse employment action, but that does not carry the day at this juncture in this case. MGH contends that the supervisors who decided to fire Eib made that decision on September 7, 2016, several months after Eib's attorney's email, and so could not have been influenced by it (assuming they were even made aware of it by their counsel). MGH insists it was completely unaware of Eib's September 26 Charge of Discrimination until he told Ms. Cornelious about it the next day, which of course was also the day he was fired. It is undisputed, though, that Eib, through his attorney, expressly complained about age discrimination in May 2016, that he told Cornelious during their meeting on September 27 that he had filed a charge of discrimination the day before, and that he was fired that same day.

MGH is correct that "[a]n employer must have actual knowledge of the employee's protected activity [for the employee] to state a claim for retaliation." *Smith v. Lafayette Bank & Tr. Co.*, 674 F.3d 655, 658 (7th Cir. 2012) (citing *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1122 (7th Cir. 2009)). MGH says it had no knowledge of Eib's charge of discrimination when it made the decision to fire him. MGH does not dispute, however, that Eib's attorney sent an email

expressly complaining about age discrimination a few months before Eib was fired. And while general workplace complaints usually *do not* constitute protected activity, they can serve as such if the complaining employee specifically raises the specter of unlawful discrimination. "In order for [an employee's] complaints to constitute protected activity, they must include an objection to discrimination on the basis of age. 29 U.S.C. § 623. . . . General complaints . . . do not constitute protected activity under the ADEA because they do not include objections to discrimination based on . . . age. *Smith v. Lafayette Bank & Tr. Co.*, 674 F.3d 655, 658 (7th Cir. 2012) (citing *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir.2006) ("Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient.")). In the present case, Eib's attorney's email specifically raised the issue of age discrimination. The email stated, in its entirety, as follows:

> I represent a client who is an employee of Marion General Hospital in Marion, Indiana which is, as I understand, a client of Ice Miller.
>
> My client appears to have been the subject of discriminatory treatment in violation of the Age Discrimination Act of 1967 [sic], (29 U.S.C.A. § 623) and retaliation in violation of the prohibition against intimidation or retaliation contained within HIPAA (45 C.F.R. § 160.316).
>
> I am trying to identify the appropriate attorney to discuss this matter with in hopes [sic] of dealing with these issues as informally as possible and eliminate the need to unnecessary litigation. I was provided your name as potentially the individual I would need to speak with. If that is not the case, I would appreciate your guidance in finding the appropriate individual.

Email from Attorney Jarred Eib to Attorney Kevin Woodhouse, May 2, 2016 (ECF 35-2, p. 13).

Thus, Eib's attorney's email expressly alleged claims of age discrimination against MGH. MGH does not deny that it (or its attorneys) received the email, arguing only that it preceded the

decision to terminate him by several months and so is insufficient to support a claim for (or raise a fact issue about) retaliation.

In this case the issue of retaliation does not lend itself to resolution at the summary judgment stage since it stands or falls on the credibility of witnesses, meaning of course the MGH representatives who were involved in the decision to terminated Eib's employment. Eib has succeeded in raising a genuine issue of material fact as to his retaliatory discharge claim, and it can only be resolved after a jury examines the evidence *and* makes credibility determinations. Accordingly, MGH's motion for summary judgment as to Eib's claim for retaliatory discharge is denied.

Eib attempts to inject another theory into this case to support a claim for retaliation. He alleges that "approximately two (2) weeks after MGH had learned of [Eib's] initial charge of discrimination[,]" his wife, who was also employed at MGH, "was called into a meeting by her supervisor where she was questioned regarding her loyalty to MGH." Plaintiff's Response in Opposition, p. 23. Eib claims that at this meeting in October 2016, his wife's "employment with MGH was threatened specifically as a result of [his] filing of a charge of discrimination against MGH with the EEOC." *Id*. MGH insists that this is irrelevant and fails to support Eib's claim that *he was retaliated against*. MGH argues that Eib's wife could have filed her own charge of discrimination if she believed that she had been discriminated against, but that his "allegations do not support a claim of retaliation <u>against</u> [Mr. Eib], so he is not the person aggrieved and he has failed to identify any injury he suffered in connection with alleged retaliation against [his wife]." Defendant's Reply, p. 15. MGH is correct that Eib cannot pursue a claim of retaliation either on behalf of his wife (a fact he does not appear to contest) or on his own behalf *because* of MGH's

alleged treatment of his wife.

Eib argues that the Supreme Court's decision in *Thompson v. North American Stainless, LP*, 562 U.S. 170 (2011) expanded the law regarding retaliation to permit him to base a claim for retaliation on MGH's alleged treatment of his wife. Plaintiff's Response, p. 24. Eib argues that "[i]t is incumbent to determine whether a reasonable factfinder could conclude that MGH engaged in retaliation against Mr. Eib by threatening to terminate his wife's employment due to his engagement in protected activities." *Id*. MGH contends that Eib is misinterpreting and misapplying the holding in *Thompson*. MGH acknowledges that *Thompson* provides that an employee who has a particularly close relationship to a another employee, such as a fiancé or spouse, can bring a retaliation charge if she feels she was retaliated against because her fiancé or spouse engaged in protected activity. The holding in *Thompson* does not, however, permit Eib to claim that *he* was retaliated against when MGH allegedly threatened his *wife's* employment (especially given the fact that Mr. Eib was no longer employed at MGH when this meeting took place). Eib claims that MGH's argument on this point "is a woeful misrepresentation" of the holding in *Thompson*. However, it is Eib's interpretation and application of *Thompson* that is incorrect, not MGH's.

In *Thompson*, the Supreme Court held that the Title VII anti-retaliation provision can be violated if an employee suffers an adverse employment action in retaliation for another employee's protected activity. *Richter v. Evans*, 2014 WL 4700852, at *2-3 (N.D. Ind. Sept. 22, 2014) (citing *Thompson*, 131 S.Ct. At 870). In *Richter*, the plaintiff alleged that she was retaliated against because her son, who was also employed by the defendant, had engaged in protected activity by lodging his own complaint of discrimination. While this Court rejected

Richter's attempt to assert a "third-party reprisal claim," under *Thompson*, Chief Judge Springmann acknowledged that "if the Defendant took adverse action against the Plaintiff in response to her son's complaint, it violated Title VII because a reasonable worker might well be dissuaded from making a charge of discrimination if he knew his mother would be suspended from her employment as a result." *Richter*, 2014 WL 4700852, at *2.

If Eib's wife suffered an adverse employment action by MGH because her husband had filed a Charge of Discrimination, she could bring a retaliation claim of her own and would not need *Thompson* to do so. Eib contorts the holding in *Thompson* to support his argument that *he* can assert a claim for retaliation based on MGH's alleged threat to his wife. But it is undisputed that Eib was no longer employed at MGH at the time, and obviously had never been dissuaded from asserting his own rights under ADEA due to any adverse action his wife might have suffered. For these reasons, Eib cannot maintain a claim of retaliation against MGH based on its alleged actions with regard to his wife. Accordingly, MGH is entitled to judgment as a matter of law on Eib's claim of retaliation for alleged adverse employment action taken against his wife after his termination.

Finally, MGH argues that Eib's retaliation claim fails because he "cannot establish that he was performing to meet the Hospital's legitimate expectations or that he was treated more harshly than younger employees." Defendant's Brief in Support, p. 24. MGH insists that "[t]he reasons offered by the Hospital for terminating Eib's employment are entirely legitimate and based on the Hospital's assessment that Eib was continuing, despite many warnings and a suspension, to provide poor patient care, along with other related performance problems. . . . The fact that Eib was not treated any less favorably based on his age is bolstered by the undisputed

fact that Amy Jones, the other paramedic on the final run with Eib and whose patient care record was similarly poor, was also fired–and she had engaged in no kind of protected activity." *Id.* (citing affidavits of Cornelious, Jackson, Jones, Hendrickson, and Hilton-Siebert). In other words, MGH contends that Eib cannot establish the elements necessary to support a claim for retaliation under a *McDonnell Douglas* indirect method analysis.

It is well established (and MGH does not dispute) that "[a] retaliation claim under the ADEA may be established by either the direct or indirect method." *Hutt v. AbbVie Prod. LLC*, 757 F.3d 687, 693 (7th Cir. 2014) (citing *Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 657 (7th Cir.2012)). "'Under the direct method of proof, a plaintiff must show: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two.'" *Id.* (quoting *Smith*). MGH notes that "[d]epending on the circumstances, courts also insist (under the 'indirect method' of analysis) that the plaintiff establish that he was performing his job satisfactorily and was subject to less favorable treatment than similarly situated employees who did not engage in protected activity." Defendant's Brief in Support, p. 23 (citation omitted).

Because the Court concludes that Eib has raised a genuine issue of material fact as to his claim for retaliation, and that the claim cannot be resolved absent a weighing of the evidence and credibility determinations, MGH's alternative argument need not be addressed. The Court, applying the standard set forth in *Ortiz* and considering the evidence "as a whole," concludes that it "would permit a reasonable factfinder to conclude that the plaintiff's [age] caused the [adverse employment action]." *Ortiz v. Werner Enters., Inc.*, 834 F.3d at 765. As the Seventh Circuit clarified in *Ortiz*:

> Today's decision does not concern *McDonnell Douglas* or any other
> burden-shifting framework, no matter what it is called as a shorthand. We are
> instead concerned about the proposition that evidence must be sorted into
> different piles, labeled "direct" and "indirect," that are evaluated differently.
> Instead, all evidence belongs in a single pile and must be evaluated as a whole.
> That conclusion is consistent with *McDonnell Douglas* and its successors.

*Id*. at 766. In keeping with *Ortiz*, and applying what this Court has referred to as a "30,000-foot

view" of the evidence, the Court concludes that Eib's claim of retaliation (as well as MGH's

defenses thereto) cannot be resolved absent credibility determinations and a weighing of the

evidence. Accordingly, MGH's motion for summary judgment as to Eib's claim for retaliatory

discharge is denied.

## CONCLUSION

For the reasons set forth above, Defendant Marion General Hospital's motion for

summary judgment (ECF 31) is GRANTED in part and DENIED in part. Summary judgment is

granted in favor of Defendant on Plaintiff's claims for discriminatory demotion, discriminatory

imposition of overtime, and hostile work environment. Summary judgment is denied as to

Plaintiff's claim for retaliatory discharge. This case will be set for a telephonic scheduling

conference by separate entry at which time the Court will schedule further proceedings, including

final pretrial conference and trial dates.

Date: April 8, 2019.


/s/ William C. Lee
William C. Lee, Judge
U.S. District Court
Northern District of Indiana