# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

ROGER L. EIB,                    )
                                 )
      Plaintiff,                )
                                 )
v.                               )    Case No. 1:17-CV-277
                                 )
MARION GENERAL HOSPITAL, INC.,   )
                                 )
      Defendant.                )

## OPINION AND ORDER

This matter is before the Court on a motion for reconsideration filed by Defendant

Marion General Hospital, Inc., on April 16, 2019 (ECF 40). Plaintiff Roger Eib filed a response

in opposition to the motion on May 6, 2019 (ECF 43). Marion General chose not to file a reply

brief and so the motion is ripe for resolution. For the reasons discussed below, the motion is

GRANTED. The Clerk of the Court is instructed to enter judgment in favor of Defendant and

against Plaintiff.

## PROCEDURAL POSTURE
## AND STANDARD OF REVIEW

Although there is no Federal Rule of Civil Procedure that expressly authorizes the filing

of a motion to reconsider an interlocutory order, Rule 54(b), under which Marion General brings

its motion, provides a mechanism for a district court to reconsider its own interlocutory orders at

"at any time before the entry of a judgment adjudicating all the claims and all the parties' rights

and liabilities." Rule 54(b). This Court has explained the Rule's provisions as follows:

> Federal Rule of Civil Procedure 54(b) provides that a court may alter or amend an
> interlocutory order any time before entry of final judgment. *See Moses H. Cone*
> *Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12, 103 S.Ct. 927, 74 L.Ed.2d
> 765 (1983) ("[E]very order short of a final decree is subject to reopening at the

discretion of the district judge."). Unlike a motion to reconsider a final judgment, which must meet the requirements of Federal Rules of Civil Procedure 59 or 60, "a motion to reconsider an interlocutory order may be entertained and granted as justice requires." *Akzo Coatings, Inc. v. Aigner Corp.*, 909 F.Supp. 1154, 1160 (N.D.Ind. 1995).

Reconsideration of an interlocutory order may be appropriate when the facts or law on which the decision was based change significantly after issuance of the order, or when the court has misunderstood a party, made a decision outside the adversarial issues presented by the parties, or made an error not of reasoning but of apprehension. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). "These grounds represent extraordinary circumstances, and . . . a motion to reconsider is to be granted only in such extraordinary circumstances . . . Indeed, the court's orders are not mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *United States Securities and Exch. Comm'n v. National Presto Indus., Inc.*, 2004 WL 1093390, at *2 (N.D.Ill. Apr. 28, 2004). Motions to reconsider serve a limited function: "to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996).

*Sandifer v. U.S. Steel Corp.*, 2010 WL 61971, * 1 (N.D.Ind. Jan. 5, 2015). As this Court has also noted, "[m]otions for reconsideration are 'not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion.'" *First Specialty Ins. Corp. v. Supreme Corp.*, 2018 WL 4680015, at *2 (N.D. Ind. Sept. 28, 2018) (citing *Caisse Nationale*, 90 F.3d at 1269); *In re Oil Spill by "Amoco Cadiz" Off Coast of France on March 16, 1978*, 794 F.Supp. 261, 267 (N.D. Ill. 1992), *aff'd*, 4 F.3d 997 (7th Cir. 1993) ("[M]otions to reconsider are not at the disposal of parties who want to 'rehash' old arguments.")).

It is well-established, then, that district courts should entertain motions to reconsider only in very limited circumstances and for very limited reasons. But on occasion–and this is one of them–motions for reconsideration help sharpen the focus on factual or legal issues or both.

Marion General's brief in support of its motion does just that. In such circumstances, "[d]istrict courts possess the inherent authority to modify interlocutory orders." *U.S. S.E.C. v. Nat'l Presto Indus., Inc.*, 2004 WL 1093390, at *1 (N.D. Ill. Apr. 28, 2004) (citing *Cameo Convalescent Ctr., Inc. v. Percy*, 800 F.2d 108, 110 (7th Cir. 1986); *Kapco Mfg. Co. v. C & O Enterprises, Inc.*, 773 F.2d 151, 154 (7th Cir. 1985)). Having concluded that Marion General's motion to reconsider raises valid arguments, the Court will consider those arguments and re-examine the evidence under the standard of review for Rule 56 motions for summary judgment (as set forth in the Court's previous Opinion and Order at pages three through five).

Marion General's motion asks the Court to reconsider its previous Opinion and Order entered on April 8, 2019, in which the Court granted in part and denied in part Marion General's motion for summary judgment that the Hospital had filed on November 8, 2018. The Court ruled in that order that Marion General was entitled to summary judgment on all of Eib's age discrimination claims but that his retaliation claim survived. Marion General "moves the Court to reconsider its denial of summary judgment with respect to Eib's retaliation claim in light of what it believes to be manifest errors of fact and law. MGH contends that it is entitled to judgment as a matter of law regarding Eib's retaliatory discharge claim and that Eib's Amended Complaint should be dismissed in its entirety." Defendant's Brief in Support of Motion to Reconsider (ECF 41), p. 1.[1]

---

[1] Marion General also makes the following request: "The Court did not specifically rule on any claim that Eib was discharged because of his age in violation of the ADEA. The Court may have determined that such a claim was not articulated in Eib's Amended Complaint. Nevertheless, the Hospital seeks clarification of this issue." *Id.*, n. 1. This request for clarification is discussed later in this order.

Marion General also argues that Eib fails to present any evidence to refute the Hospital's proffered nondiscriminatory reasons for terminating him. In its previous order the Court did not engage in a *McDonnell-Douglas* analysis of Eib's retaliation claim, having concluded–wrongly, as it turns out–that Eib had raised a credibility issue as to that claim. After closer scrutiny and consideration of the parties' arguments and evidence, the Court concludes that Marion General is correct that Eib has failed to carry his burden of proof and his retaliation claim does not withstand summary judgment.

Eib's response brief in opposition to the Hospital's motion is perfunctory and adds nothing to the mix. Eib dedicates the first two and a half pages of his three-page response to a recitation of the law regarding motions for reconsideration, and one paragraph to what could be deemed argument, to wit:

> In its motion to reconsider, the Defendant does not present any new facts that were not available earlier nor any new law so as to compel the Court to reconsider its decision. Moreover, the Defendant has not shown that the Court has patently misunderstood its arguments or made errors of apprehension. In fact, the Defendant repeats most of its arguments from the briefs in support of its motion for summary judgment, making the instant motion a kind of sur-reply.

Plaintiff's Response to Defendants' [sic] Motion to Reconsider (ECF 43), p. 2. Eib's "argument" is that the Court got it right the first time and should not revisit its prior rulings. But that is not correct. Marion General may not be presenting new or additional facts or law, but it has refined its presentation of the facts and evidence, sharpened the point on its legal arguments, and exposed the flaws in the Court's prior analysis (or lack thereof) of Eib's retaliation claim.

**DISCUSSION**

**I. Plaintiff has failed to establish a causal link between his protected activity
and his discharge.**

This Court held in its previous opinion that Eib's retaliatory discharge claim survived

summary judgment because of a credibility issue. Opinion and Order (ECF 38), p. 32. Marion

General argues that the Court "made several factual presumptions, unsupported by the record,

then concluded, based on those unsupported assertions, that an issue of fact existed." Brief in

Support, p. 5. The Hospital argues as follows:

> The Court's factual presumptions, which are unsupported by the record, are
> manifest errors of fact which stand in need of correction. Without the aid of such
> factual errors, there is no material issue of fact regarding causation, and MGH is
> entitled to judgment as a matter of law because Eib cannot establish the Hospital's
> decision-makers were aware of his alleged protected activity prior to making the
> decision to terminate his employment.

*Id.*, p. 6.

The Court concluded that the facts, when construed in Plaintiff's favor, gave rise to a

credibility issue regarding retaliation. The Court's conclusion was based on Eib's assertion that

on "May 2, 2016 . . . Mr. Eib, via counsel, corresponded with attorneys representing MGH at Ice

Miller, LLP raising the issue of discriminatory conduct directed toward Mr. Eib in violation of

the [ADEA]." Amended Complaint, p. 3. Eib also alleged that "[o]n or about September 27,

2016, Mr. Eib attended a meeting with representatives of MGH during which Mr. Eib stated that

he had filed the above-reference[d] charge, after which Mr. Eib was immediately terminated."

*Id.*, p. 4. The Court concluded that a jury would have to assess the credibility of the Hospital's

decision-makers and thus summary judgment was inappropriate. Opinion and Order, pp. 22-28.

The problem, as Marion General explains, is that the Hospital's evidence on summary judgment

shows that the decision to terminate Eib was made weeks before he was fired, that the decision-makers knew nothing about his protected activity at the time they made the decision, and that even if they did, they still had legitimate reasons for their decision and Eib presents no evidence to refute those reasons.

The Court concluded that because Eib alleged he was fired four months after having complained about age discrimination, he had raised a credibility issue–a conclusion that Marion General insists is contradicted by the evidence and based on a faulty assumption that the decision-makers who fired Eib knew about that protected activity. Marion General correctly argues that "[i]t was Eib's burden to establish a causal connection between his protected activity and his discharge from employment. *Durkin v. City of Chicago*, 341 F.3d 606, 614, n. 4 (7th Cir. 2003) ('proof of the employer's knowledge' is part of the plaintiff's *prima facie* case). He failed to do so because he failed to provide any evidence that his protected activity was made known to those who made the determination to terminate his employment." Brief in Support, p. 7. Marion General states that it "believes the Court made a manifest error of fact with regard to the email and a manifest error of law with regard to the proper application of the evidentiary burden in a retaliation case. This Court's holding that the retaliatory discharge claim rises or falls on the credibility of witnesses flows from these errors, which the Hospital now moves the Court to correct." *Id.*, p. 3.

When Eib states that his lawyer "corresponded with attorneys representing MGH" on May 2, 2016, he is referring to a single email he alleges was sent to the Hospital's outside law firm. That email stated, in its entirety, as follows:

I represent a client who is an employee of Marion General Hospital in Marion,

Indiana which is, as I understand, a client of Ice Miller.

My client appears to have been the subject of discriminatory treatment in violation of the Age Discrimination Act of 1967 [sic], (29 U.S.C.A. § 623) and retaliation in violation of the prohibition against intimidation or retaliation contained within HIPAA (45 C.F.R. § 160.316).

I am trying to identify the appropriate attorney to discuss this matter with in hopes [sic] of dealing with these issues as informally as possible and eliminate the need to unnecessary litigation. I was provided your name as potentially the individual I would need to speak with. If that is not the case, I would appreciate your guidance in finding the appropriate individual.

Email from Attorney Jarred Eib to Attorney Kevin Woodhouse, May 2, 2016 (ECF 35-2, p. 13).

Marion General does not dispute such a communication could constitute protected activity, but argues that it does not matter because, 1) the email preceded the decision to fire Eib by four months, which is insufficient to establish a causal link, and 2) Eib presents no evidence that the individuals who made the decision to fire him knew anything about the email when they made that decision. The Hospital contends as follows:

While it may be possible for an employee to assert employment rights through his lawyer as a form of protected activity, that employee must still present evidence that the actual decision-makers were aware of such protected activity. . . . Eib made no allegation anywhere in his charges of discrimination, his Amended Complaint before this Court, or in any of the summary judgment papers that those MGH administrators involved in the decision to terminate his employment were ever aware of his lawyer's email.

Brief in Support, p. 3 (citing *Cervantes v. Ardaugh Group*, 914 F.3d 560, 566-67 (7th Cir. 2019); *Shafer v. Kal Kan Foods, Inc.*, 417 F.3d 663, 664 (7th Cir. 2005)). Marion General insists–and is correct–that Eib's retaliation claim fails because he cannot establish a causal link between his lawyer's email (i.e., his "protected activity") and Marion General's decision to terminate his employment.

The court considers the evidence as a whole and conducts a "straightforward inquiry: Does the record contain sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the [materially adverse action]?" *Lord v. High Voltage Software, Inc*., 839 F.3d 556, 563 (7th Cir. 2016) (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)). A retaliation claim is subject to the same general standard announced in *Ortiz*: a plaintiff must "produce enough evidence for a reasonable jury to conclude that (1) [he] engaged in a statutorily protected activity; (2) [defendants] took a materially adverse action against [him]; and (3) there existed a but-for causal connection between the two." *Allen-Noll v. Madison Area Tech. Coll.*, 2019 WL 3412589, at *10 (W.D. Wis. July 29, 2019) (citing *Burton v. Bd. of Regents of Univ. of Wis. Sys*., 851 F.3d 690, 695 (7th Cir. 2017)).

It is undisputed that Eib engaged in two instances of protected activity before he was fired; first when his lawyer sent the email to Marion General's outside counsel on May 2, 2016, and next when he filed his first Charge of Discrimination with the EEOC on September 26, 2017. But as Marion General points out, it is undisputed that "the filing of a charge of employment discrimination[] was not known by the Hospital's decision-makers at the time the discharge decision was made." Brief in Support, p. 2, n. 2 (citing affidavits of Cornelious, Jackson, Jones, Hendrickson, and Hilton-Siebert). So, the only protected activity Eib arguably engaged in prior to his termination–sending an email to the Hospital's outside law firm several months before–is the only protected activity on which he can base his retaliation claim. Marion General, however, presented affidavits from the individuals who made the termination decision, all of whom state that they knew nothing about any protected activity by Eib. The Hospital insists that the Court's previous ruling on this issue was error because "[t]he Court presumed the alleged email was

received by outside counsel, that it was communicated to the Hospital administration and decision-makers in Eib's discharge, and that such a communication occurred in a time period and in a fashion relevant to the termination decision." *Id*., p. 5. Marion General is correct that Eib presents no evidence whatsoever that any of these decision-makers knew anything about the email. In fact, he does not even make that assertion, either in his Amended Complaint, his brief in opposition to summary judgment, or in his Statement of Genuine Issues. He also does not dispute that the decision to fire him was made on September 7–nearly three weeks *before* he filed his first Charge of Discrimination. The evidence shows that the Hospital's decision-makers knew nothing of Eib's alleged "protected activity" at the time they made their decision to fire him. Accordingly, his claim for retaliation fails because he cannot establish (or even raise a fact issue regarding) a causal connection between his protected activity and his termination.

The decision-makers named above include Tammy Cornelious, Administrative Director of Emergency Services (ECF 32-3, pp. 2-11); Derek Jackson, Ambulance Department Manager (*id*., pp. 13-25); Sheryl Hendrickson, Employer Relations Manager (*id*., pp. 33-43); Karen Jones, Administrative Director of Human Resources (*id*., pp. 64-69); and Stephanie Hilton-Siebert, the Hospital's President and CEO (*id*., pp. 70-73). All of these individuals state that they investigated incidents of poor patient care by Eib, met and discussed those issues, and made the decision to terminate his employment on September 7, 2016. Cornelious Aff., ¶ 27; Jackson Aff., ¶ 34; Hendrickson Aff., ¶ 20; Jones Aff., ¶¶ 10-11; Hilton-Siebert Aff., ¶ 9. These individuals also state that "[a]fter a long history of substandard performance and a suspension only four months earlier, Eib's continuing pattern of poor patient care, poor judgment, poor documentation, and lack of accountability was unacceptable to me. In my honest opinion, Eib fell far short of the

standard of performance expected of a skilled paramedic." Cornelious Aff. ¶28; Jackson Aff. ¶35; Jones Aff. ¶12; Hendrickson Aff. ¶21.

Eib responds to the factual assertions of the Hospital decision-makers by claiming that they "serve[] as a mere denial of the allegations of Plaintiff with respect to the discriminatory intent of Defendant without any cited supporting evidence beyond the statement of Defendant's employees. Where the non-moving party 'may not rest upon the mere allegations or denials of his pleading' (*Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)) in defeating a motion for summary judgment, neither should the movant party be permitted to rely on mere denial of allegations in supporting a motion for summary judgement [sic]." Plaintiff's Statement of Genuine Issues (ECF 35-1, pp. 84-85). But the statements by the decision-makers that they honestly believed the reasons for their decision are more than a "mere denial" of Eib's allegation. The assertions are supported by the documentary evidence submitted by the Hospital, which includes documents detailing the Hospital's investigation of Eib and his fellow paramedic, Amy Jones, regarding an incident of alleged poor patient care and poor documentation in April 2016 (ECF 32-3, p. 12, pp. 26-32; pp. 44-63); and 2) documents detailing the investigation of Eib regarding an incident in August 2016, his Formal Written Reprimand regarding the April 2016 incident, and his Discharge Notice, which summarizes Eib's history of performance issues, warnings and reprimands (ECF 32-2, pp. 197-208). While Eib disputes the assertions that his job performance was inadequate during the April and August 2016 patient encounters, he does not present any evidence that the Hospital's stated reasons for his termination were pretextual–he simply claims they were wrong and argues that this is sufficient to create a fact issue.

Marion General also argues that even if anyone at the Hospital was aware of the email sent by Eib's attorney (and again, Eib presents no evidence that was the case), it preceded the decision to fire Eib by just more than four months, which is insufficient to establish a causal link between that protected activity and the adverse employment action. Brief in Support., p. 13 (citing *Longstreet v. Illinois Dep't. of Corrections*, 276 F.3d 379, 384 (7th Cir. 2002) (four-month gap between protected activity and adverse employment action is insufficient to establish retaliation claim)); *see also*, *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 665 (7th Cir. 2006) ("This court has held a temporal connection of four months failed to establish a causal connection between a protected activity and an adverse action.") (citing *Longstreet* and *Sauzek v. Exxon Coal USA, Inc*., 202 F.3d 913, 919 (7th Cir. 2000) (holding that a three-month gap alone could not reasonably support a causal connection for a retaliation claim)). It is well-established that temporal proximity is rarely sufficient to establish–or even raise a fact issue about–retaliation, especially when the gap between a plaintiff's complaints and the adverse employment action is too long. *See Odongo v. Brightpoint N. Am., L.P.*, 2018 WL 4539265, at *10 (S.D. Ind. Sept. 21, 2018) (six-month gap "fails to raise a reasonable inference of a causal connection between Odongo's complaint and his termination."); *Evans v. Patrick Aluminum, Inc*., 2018 WL 2445544, at *7 (S.D. Ind. May 30, 2018) ("Speculation based on suspicious timing alone does not support a reasonable inference of retaliation; instead, plaintiffs must produce facts which somehow tie the adverse decision to the plaintiffs' protected actions."); *Boylan v. Ball State University*, 2019 WL 3484161, at *6 (S.D. Ind. July 31, 2019) ("Speculation based on suspicious timing alone, however, does not support a reasonable inference of retaliation.") (citing *Ripberger v. Corizon, Inc.*, 773 F.3d 871, 883 (7th Cir. 2014) ("[M]ere

11

temporal proximity between [the statutorily protected activity] and the action alleged to have been taken in retaliation for that [activity] will rarely be sufficient in and of itself to create a triable issue.")). Similarly, Eib's contention that his lawyer's email communication sent four months before the Hospital decided to fire him is insufficient to establish a causal link between that alleged protected activity and his termination.

Since none of the decision-makers responsible for Eib's termination knew about the email his lawyer allegedly sent to the Hospital's outside law firm months before, and Eib presents no evidence that they did, they could not have retaliated against him for that activity. "An employer must have actual knowledge of the employee's protected activity [for the employee] to state a claim for retaliation." *Smith v. Lafayette Bank & Tr. Co.*, 674 F.3d 655, 658 (7th Cir. 2012) (citing *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1122 (7th Cir. 2009)). As stated, Eib does not even allege that the Hospital decision-makers knew about his lawyer's email. His claim rests on his theory that because his lawyer allegedly sent an email complaining of age discrimination, his termination four months later must have resulted from that. That theory is faulty. *See Shafer v. Kal Kan Foods, Inc.*, 417 F.3d 663, 664 (7th Cir. 2005) ("Post hoc ergo propter hoc is not a good way to establish causation). As the Seventh Circuit explained in *Shafer*: "That approach would turn the federal judiciary into a body of employment arbitrators asking whether personnel decisions are supported by 'just cause.' The lack of 'just cause' would establish that forbidden discrimination or retaliation was the real cause. That's not what federal law says. The burden of persuasion is the plaintiff's. Whether or not [the employer] responded in the best way to the workplace [issues] . . . [is] outside the scope of Title VII. *Id*. at 664-65. *See also, Lee v. Chicago Transit Auth*., 2015 WL 1868121, at *4 (N.D. Ill. Apr. 22, 2015) (a plaintiff

"cannot simply allege that his protected activity preceded the adverse action in order to show that the former caused the latter.") (citing *Bermudez v. TRC Holdings, Inc.*, 138 F.3d 1176, 1179 (7th Cir. 1998) (discussing the logical fallacy of post hoc ergo propter hoc)). "Instead, he must 'produce facts which somehow tie the adverse decision to [his] protected actions.'" *Id.* (quoting *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000)). Eib has failed to establish a causal link between his protected activity and his termination and the Court concludes that Marion General Hospital is entitled to judgment as a matter of law on Eib's claim for retaliatory discharge.

### II. Eib fails to raise a genuine issue of fact as to Defendant's proffered nondiscriminatory reasons for terminating him.

Eib's retaliation claim also fails because he presents no evidence that the Hospital's reason for firing him was a lie. The individuals who made the decision to fire Eib all stated in their affidavits that their decision was based solely on his poor performance, which is also documented in the evidence submitted by Marion General. Marion General argues in its motion for reconsideration that the Court failed to discuss or consider the Hospital's summary judgment argument that it had legitimate, non-discriminatory reasons to terminate Eib and, more importantly, that Eib has failed to present any evidence whatsoever that those reasons were pretextual. Brief in Support, pp. 11-15. The Hospital insists that "[t]o survive summary judgment, Eib must demonstrate that 'a retaliatory motive *actually* influenced the decision-maker, not merely that it *could* have.'" *Id.*, pp. 13-14 (quoting *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1108 (7th Cir. 2012)). Marion General insists that "[i]t is undisputed that the Hospital terminated Eib after a long history of substandard performance and a suspension

13

only a few months prior to his termination. The Hospital honestly believed that Eib's continuing pattern of poor patient care, poor judgment, poor documentation and lack of accountability was unacceptable. . . . Eib cannot establish that MGH's proffered legitimate reasons for terminating his employment were lies." *Id.*, p. 14.

"In an employment discrimination or retaliation case, a plaintiff's claims survive summary judgment where the evidence permits 'a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor *caused the discharge* or other adverse employment action.'" *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (italics added). When ruling on a summary judgment motion in an employment discrimination or retaliation case, courts must consider the evidence as a whole. *Id. See also*, *Haggerty v. St. Vincent Carmel Hosp.*, 2019 WL 2476682, at *3 (S.D. Ind. June 13) ("When ruling on a summary judgment motion in an employment discrimination or retaliation case, courts must consider the evidence as a whole.") (citing *Ortiz*); *Lewis v. Wilkie*, 909 F.3d 858, 866-67 (7th Cir. 2018) (courts are to evaluate the evidence "as a whole to determine if it 'would permit a reasonable factfinder to conclude that the . . . proscribed factor caused the discharge or other adverse employment action.") (quoting *Ortiz*, 834 F.3d at 764-65).

The Court in its previous order deemed it unnecessary to assess Eib's retaliation claim pursuant to *Ortiz* or engage in a *McDonnell-Douglas* analysis[2] after concluding (too hastily, for

---

[2] "[T]he 'well-known and oft-used *McDonnell Douglas* framework for evaluating discrimination remains an efficient way to organize, present, and assess evidence in discrimination cases.'" *Lamothe v. Fed. Express Corp.*, 2018 WL 6003969, at *7 (S.D. Ind. Nov. 15, 2018) (quoting *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018)); *see also, Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017) ("Nothing in *Ortiz* . . . displaced the burden-shifting analysis established in *McDonnell Douglas*.").

the reasons already discussed above) that a credibility issue existed that precluded summary judgment. Marion General argues that the Court should not have stopped short and that doing so was a manifest error of law. The Hospital contends that it "offered legitimate and non-retaliatory reasons for its termination decision that Eib could not show were pretextual. . . . However, the Hospital's rationale for terminating Eib's employment was not discussed or analyzed by the Court at all. The Court decided that consideration of such evidence was relegated to the 'indirect method' of proof, so would not be evaluated. . . . The Hospital believes this approach to evaluating the evidence is a manifest error of law." Brief in Support, p. 8. Marion General insists that "*Ortiz* requires evaluation of the evidence as a whole[]" and that "[t]he Court made a manifest error of law when it failed to consider whether the evidence as a whole could permit a reasonable fact-finder to conclude that Eib's protected activity promoted his discharge." *Id.*, p. 10.

On this front, Marion General contends that "[i]t is undisputed that the Hospital terminated Eib after a long history of substandard performance and a suspension only a few months prior to his termination. The Hospital honestly believed that Eib's continuing pattern of poor patient care, poor judgment, poor documentation, and lack of accountability was unacceptable. . . . Moreover, Eib produced no evidence of any similarly-situated employee who was treated more favorably. In fact, the undisputed evidence showed that Amy Jones, who had a comparable record of poor performance as a paramedic, was also terminated from employment and had engaged in no protected activity." *Id.*, p. 14. Marion General is adamant that "an assessment of [the] undisputed facts shows [Marion General] established that there is no genuine issue as to the reasons Eib was terminated from employment and Rule 56 'mandates' the entry of

summary judgment." *Id.*, p. 15.

In support of its position, Marion General again refers the Court to the affidavits of the key players and additional documentary evidence. In those affidavits, the individuals involved in the decision to fire Eib stated under oath that their decision was based on Eib's poor performance, i.e., that he was not meeting the Hospital's reasonable expectations and was fired for that reason and that reason alone. Cornelious states in her affidavit that Eib's poor performance and "disciplinary history dates back to very early in his career. . . . Most significantly to me, Eib's performance evaluations and disciplinary actions from 2008 through 2016, all of which I reviewed, reflected consistent criticism of his failure to follow appropriate patient treatment protocols, failure to take the initiative to bring medical equipment to the patient while at the scene of an emergency, and failure to document properly. By April of 2016, Eib had accumulated verbal counseling, written warnings, and annual performance reviews that documented his poor patient care and related performance issues that were very concerning to me." Cornelious Affidavit (ECF 32-3), p. 4. Addressing Eib's disciplinary suspensions in April and August of 2016, Cornelious explains as follows:

> On April 13, 2016, Eib was the lead paramedic on an ambulance crew that responded to an emergency call for a patient in cardiac arrest. Attached to the Eib deposition as Exhibit 15 is a true and accurate copy of the written warning and three-day suspension issued to Eib as a result of this situation. . . . I found Eib's poor patient care in this situation to be unacceptable.
> . . .
> Within four months of his disciplinary suspension on April 26, 2016, Eib was investigated for again providing substandard care to a patient and related performance issues. Eib was the lead paramedic on an ambulance crew that was called to the scene of a possible suicide by hanging in August of 2016. . . . On August 17, 2016, Eib was suspended with pay, pending further investigation of the incident.
> . . .

> Amy Jones, the other paramedic on this particular run, was also suspended with pay during the investigation in the August 2016 hanging incident.
>
> . . .
>
> Our investigation showed that, as had been the case in the April of 2016 cardiac arrest incident, Eib again demonstrated poor patient care and poor documentation related to the August incident.
>
> . . .
>
> After a long history of substandard performance and a suspension only four months earlier, Eib's continuing pattern of poor patient care, poor judgment, poor documentation, and lack of accountability was unacceptable to me . . . and I no longer had confidence in Eib's ability or desire to provide . . . high quality care.

*Id*., pp. 3-8. Cornelious notes that both Eib and Amy Jones, who was also a paramedic but who was 19 years younger than Eib, were "discharged from employment[]" and that Jones "had a somewhat similar employment history to Eib, with a number of prior warnings for poor performance." *Id*., p. 8.

Derek Jackson, one of Eib's immediate supervisors, affirmed in his affidavit everything Cornelious stated in hers–that Eib had a history of poor performance, that he was investigated for poor patient care and poor documentation regarding the incidents in April and August of 2016, and that he was fired because of that poor performance. Jackson Affidavit (ECF 32-3), pp. 18-20. Jackson also confirms that Amy Jones was fired for poor performance and that she "is 19 years younger than Eib." *Id*., p. 20. Jackson also states as follows:

> I participated in the decision to recommend terminating Eib's employment. The group that made the final recommendation include me, Tammy Cornelious, Sheryl Hendrickson, . . . and Karen Jones[.] We made the decision to recommend termination of Eib's employment on September 7, 2016[,] and Karen Jones communicated that recommendation to the Hospital President and Chief Executive Officer, Stephanie Hilton-Siebert.

*Id*., pp. 21-22. Hilton-Siebert confirmed in her affidavit that she "conferred with Karen Jones . . . on the decision to discharge [Eib]. I approved the recommendation of Karen Jones, Tammy

Cornelious, Sheryl Hendrickson, and Derek Jackson to discharge Eib. I communicated my approval of the recommendation to discharge Eib to Karen Jones on September 7, 2016." Hilton-Siebert Affidavit (ECF 32-3), pp. 70-71. Hilton-Siebert, along with the other decision-makers, all stated in their affidavits that Amy Jones had never engaged in protected activity prior to her discharge. *Id.*, p. 71. And all of them stated that they were likewise unaware of any protected activity by Eib. Hilton-Siebert states that she "was not aware that Eib had filed an EEOC charge when I received the recommendation to terminate Eib's employment, nor was I aware that Eib had filed an EEOC charge at the time I approved the decision to terminate his employment because hd had not yet filed any charge, as far as I was aware." *Id.*, p. 71. Finally, Hilton-Siebert confirms that Eib's September 26, 2016, charge filed with the EEOC "was not received by the Hospital until October 17, 2016." *Id.* Hendrickson, the Hospital's Employment Relations Manager, stated in her affidavit that she reviewed Eib's personnel file and confirms that Eib had a poor performance history leading up to his termination and that both Eib and Jones were fired for performance related issues.

The affidavits and statements made therein are supported by documents submitted by Marion General, including notes taken during the investigation of the incidents in April and August of 2016, and  See ECF 32-3, p. 12, pp. 26-32; pp. 44-63. The Hospital also produced many more documents supporting its position that Eib was terminated due to a long history of poor performance, including copies of his performance reviews and copies of written reprimands. Deposition of Roger Eib (ECF 32-2), pp. 46-208.

Eib's response to Marion General's motion for summary judgment, as the Hospital contends, fails to raise a genuine issue of fact that casts any doubt on the Hospital's proffered

non-discriminatory reasons for his termination. All he offers are conclusory statements that his suspensions were imposed "because of his age." As Marion General notes, Eib cannot point to any similarly situated, younger paramedic who was treated more favorably under similar circumstances. (Again, it is undisputed that Amy Jones, who was 19 years younger than Eib, was also fired for poor performance and poor patient care and had not filed any charge of discrimination.) Indeed, while Eib's brief in opposition to summary judgment makes repeated references to "similarly situated" employees, he does not name a single one of them, let alone show how he was treated differently from these unnamed employees. Eib fails to establish that he was performing according to his employer's reasonable expectations, that any similarly situated younger employees were treated more favorably, or that the Hospital's proffered reasons for his termination were pretextual. For these reasons also, Eib's retaliation claim does not survive Marion General's motion for summary judgment.

Marion General is entitled to summary judgment because Eib cannot establish the elements necessary to sustain a claim for retaliatory discharge. Marion General's evidence shows that it had legitimate, non-discriminatory reasons for firing Eib and he fails to present contrary evidence to refute that. His claim, instead, is based on conclusory allegations and speculation, which is insufficient to survive summary judgment. *Cooney v. Casady*, 735 F.3d 514, 519 (7th Cir. 2013) ("[Speculation and conjecture" . . . cannot defeat a motion for summary judgment."); *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003) ("if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated."). For these reasons, the Court reverses its previous ruling and grants summary judgment in favor of Marion General on Eib's retaliation claim.

### III. Plaintiff's Amended Complaint does not allege that he was discharged because of his age.

As stated at the outset (see footnote 1 above), Marion General's motion to reconsider includes a request for clarification as to "any claim that Eib was discharged because of his age in violation of the ADEA. The Court may have determined that such a claim was not articulated in Eib's Amended Complaint. Nevertheless, the Hospital seeks clarification of this issue." Brief in Support, p. 1, n. 1. Marion General is correct that Eib's Amended Complaint states no claim that he was fired because of his age. His Amended Complaint alleges, in conclusory fashion, that his disciplinary suspensions in April and August of 2016 were imposed "because of his age" and that his discharge was in retaliation for his having engaged in "protected activity" when his lawyer sent an email to the Hospital's outside law firm four months prior to his termination. Amended Complaint (ECF 11). Eib's Amended Complaint does not allege that he was fired because of his age, only that he was fired in retaliation for complaining about age discrimination in the workplace. *Id.* Also, neither of Eib's charges of discrimination filed with the EEOC allege that he was fired because of his age. First Charge of Discrimination (ECF 32-2, pp. 48-49); Second Charge of Discrimination (*id*., p. 50). Marion General is correct: Eib has not alleged that he was fired because of his age and so the Court did not address any such claim.

### CONCLUSION

For the reasons discussed above, the motion for reconsideration filed by Defendant Marion General Hospital (ECF 40) is GRANTED. The Clerk of the Court is instructed to enter judgment in favor of the Defendant and against the Plaintiff.

Date: August 12, 2019.

/s/   William C. Lee
                                        William C. Lee, Judge
                                           U.S. District Court
                                    Northern District of Indiana

21